STATE OF VERMONT

ENVIRONMENTAL COURT

| Appeal of State of Vermont, | } | Docket No. 171-8-02 Vtec |
|---|---|---|
| Department of Buildings and | } | |
| General Services (Southeast | } | |
| State Correctional Facility) | } | |
| | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellant State of Vermont, Department of Buildings and General Services, appealed from a decision of the Development Review Board (DRB) of the Town of Windsor, upholding the Zoning Administrator's decision that conditional use approval is required for the construction of four temporary two-man holding cells at the Southeast State Correctional Facility, and granting conditional use approval with conditions. The State is represented by Assistant Attorney General William H. Rice, Esq. and Special Assistant Attorney General Stacy A. Butler, Esq.; and the Town is represented by J. Christopher Callahan, Esq. Interested parties Stewart and Janice Stryker entered their appearance representing themselves, but have not participated in the briefing of the present motions. The State and the Town each have moved for summary judgment on the questions of whether any zoning approval, and particularly conditional use approval, is required for this application, under the definition of 'land development' and, if so, whether 24 V.S.A. § 4409(a)[1] applies in this instance to limit the extent of Town regulation of this application.

The following facts are undisputed unless otherwise noted. Appellant owns 945 acres of land at 546 State Farm Road, off the County Road in the Town of Windsor, in the Resource zoning district. Twenty-six acres of this land is fenced as a so-called 'security complex' containing the Southeast State Correctional Facility, located on the property since about 1935 and well before the first adoption of zoning in the Town of Windsor in 1972. Nineteen buildings are located within the 'security complex,' including the Administration Building at issue in this appeal. The Administration Building was constructed in approximately 1935.

The project at issue in the present appeal is the construction of two four-person holding cells in the basement of the Administration Building. The holding cells are intended to be temporary and their use is intended to be discontinued when the Southern State Correctional Facility opens in Springfield. They are used to detain persons between the time of their arrest and the time they can be taken to court for arraignment. Detainees are usually held overnight and are brought to court the following day, but may be held as long as from Friday night to Monday morning on an ordinary weekend, or to Tuesday morning on a holiday weekend.

The holding cells are constructed entirely within the basement of the Administration Building, formerly used as a recreation room, and without making any modifications or alterations to the structural support of the Administration Building, or any alterations to or visual effect on the exterior of the Administration Building. They are constructed of plywood anchored to the

basement floor, and are faced with 'durarock' sheetrock. The holding cells are constructed within and not otherwise attached to the basement room; that is, the ceilings of the holding cells are lower than the ceiling of the basement room and the walls of the holding cells are within the walls of the basement room. The parties have not provided as undisputed facts whether the holding cells are equipped with plumbing and toilet and sink fixtures, but if detainees are held overnight we presume that either the holding cells are so equipped, or that the detainees have the use of such facilities in the Administration Building.

Construction began on the holding cells on February 27, 2002 and they were placed into use on April 29, 2002, staffed by personnel transferred from the Woodstock Southeast Regional Correctional Facility. Over the 49 days from April 29 to June 17, 2002, 84 detainees were transported to and from the holding cells.

Appellant takes the position that this project does not fall within the definition of land development requiring a permit. However, on April 16, 2002, Appellant applied for a zoning permit to obtain a jurisdictional determination as to whether the project required a zoning permit. On April 23, 2002, the Zoning Administrator ruled that the project needed conditional use approval by the DRB, and referred the application to the DRB for conditional use review. Appellant appealed the jurisdictional determination to the DRB but also presented evidence in support of conditional use approval of the project. The DRB issued its decision on July 15, 2002, upholding the jurisdictional determination of the Zoning Administrator and issuing the conditional use approval with conditions.

Consideration of this appeal is complicated by a sequence of amendments to the Zoning Regulations. The Southeast State Correctional Facility has in fact been located on this property since well before the adoption of zoning. Under regulations in effect before June 12, 2001, the use category of 'correctional facility' was a conditional use in the Resource zoning district in which the Southeast State Correctional Facility is in fact located. The regulations effective as of June 12, 2001 contained a drafting error which made the use category of 'correctional facility' a conditional use in the Rural zoning district but not in the Resource zoning district. The DRB hearings in May and June of 2002 in the present case brought this error to the attention of the Town. Public notice of a corrective amendment listing the use category of 'correctional facility' as a conditional use in the Resource zoning district therefore must have been issued at some time after the application in this matter, and before the July 15, 2002 DRB decision which mentions that the public hearing was scheduled to be held on August 13, 2002. The corrective amendment took effect on October 22, 2002.

First, without examining the applicability of 24 V.S.A. § 4409(a), or the definition of 'land development,' we note that if the Southeast State Correctional Facility currently holds a conditional use permit[2] as "a 100-bed minimum security facility," then the proposed changes needed a permit amendment simply because they added four beds to the potential maximum number of beds at the facility and possibly also if the holding cells are to be used to house detainees who potentially fail to meet the 'minimum security' criteria. See, City of South Burlington v. Vermont Dept. of Corrections, 171 Vt. 587 (2000). Material facts have not been provided by the parties as to the status and terms of any prior existing permits for the facility, and therefore this argument cannot be addressed on summary judgment.

The definition of 'land development' includes the 'conversion' or 'structural alteration' of any 'building' and includes 'any change in use' of any 'building.' It is true that the added temporary holding cells have no exterior effect of any sort, and also do not constitute the 'structural alteration' of the Administration Building. The added temporary holding cells also do not constitute a change of use of the correctional facility as a whole; it remains a correctional facility with the addition of the two temporary holding cells. However, the test for 'land development' does not depend on the use of the facility as a whole, but on the use of the particular building. For example, if a college proposed to build a new dormitory, or to convert an existing classroom building to dormitory use, the proposal would constitute 'land development' requiring a permit, even though the facility as a whole remained a 'college.' Or, if a manufacturing facility proposed to add a restaurant or a retail shop in a portion of its warehouse, the proposal would constitute 'land development' requiring a permit, even though the facility as a whole remained in the 'light industry' zoning category.

To determine whether the addition of the two temporary holding cells constitutes the 'conversion' of a building or a 'change in use' of a building, it would be necessary to know whether the Administration Building was previously used for any overnight accommodation of prisoners or detainees. It appears that it was not, although the undisputed material facts also do not explicitly address this fact. If the Administration Building was not previously used for any overnight accommodation of prisoners or detainees, then the addition of the two temporary holding cells within that building does constitute at least the change in use of that building, if not also the conversion of the building as a whole, from office or administration or daytime prisoner recreation uses to overnight accommodation, and does require a permit. Appellant-State's Motion for Summary Judgment is DENIED and the Town's Motion for Summary Judgment is GRANTED on this issue.

Under 24 V.S.A. § 4443(d), any application filed after the public notice for the first public hearing of the corrective amendment to the zoning bylaw is to be reviewed under the new bylaw. In the present case the application was filed before the public notice for the first public hearing of the corrective bylaw, and the State as the applicant had a vested right to consideration of this application under the 2001 Zoning Regulations that appear to have failed (however inadvertently) to provide for the use category of 'correctional facility' in the district in which the Southeast State Correctional facility is actually located. Exercising that vested right, the State as applicant claims exemption from the permit requirements of the 2001 version of the Zoning Regulations under 24 V.S.A. § 4409(a)(2), except as they impose the listed dimensional requirements on the proposal, arguing that the 2001 Zoning Regulations fail to make 'reasonable provision' for the location of state facilities (including correctional facilities) within the Town.

However, even with the mistake in providing for the use category of 'correctional facility' in the wrong zoning district, the Town's 2001 regulations did provide for the location of correctional facilities within the town. Presumably, absent the corrective amendment, the existing Southeast State Correctional Facility in the Resource zoning district would have become a pre-existing non-conforming use, entitled to continue under the Town's provisions for the continuation or expansion of non-conforming uses, while new correctional facilities could have been proposed for the Rural zoning district with a conditional use permit. Thus, even under the 2001 Zoning Regulations, the Town of Windsor made reasonable provision for the location of state

correctional facilities. Under the reasoning in <u>Appeal of State of Vermont Department of Buildings and General Services</u>, Docket No. 245-10-00 Vtec (Vt. Envtl. Ct., Feb 5, 2002) (on appeal under Vermont Supreme Ct. Docket No. 2002-134), the Town may regulate the facility under its complete zoning regulations and not limited to the dimensional regulations listed in 24 V.S.A. § 4409(a)(2).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant-State's Motion for Summary Judgment is DENIED and the Town's Motion for Summary Judgment is GRANTED. Although this does not conclude all the issues in this appeal, the State may wish to file an interlocutory appeal of these issues to be folded in with the issues already on appeal in <u>Appeal of State of Vermont Department of Buildings and General Services</u>, Docket No. 245-10-00 Vtec (Vt. Envtl. Ct., Feb 5, 2002) (on appeal under Vermont Supreme Ct. Docket No. 2002-134). In addition, the holding cells were proposed to be temporary, a year ago, and the issues in this appeal may become moot when they are dismantled. We will therefore hold a telephone conference this coming Friday, June 6, 2003, at 10:00 a.m., to discuss how the parties wish to proceed with the remainder of this appeal at this time.

Done at Barre, Vermont, this 30th day of May, 2003.


_____
Merideth Wright
Environmental Judge


**Footnotes**

[1.]    In <u>Appeal of State of Vermont Department of Buildings and General Services</u>, Docket No. 245-10-00 Vtec (Vt. Envtl. Ct., Feb 5, 2002) (on appeal under Vermont Supreme Ct. Docket No. 2002-134), this Court held that the Town of Windsor's zoning regulations in effect in 2000 did make reasonable provision for the location of correctional facilities, and that therefore it may apply all its zoning regulations to the Southeast State Correctional Facility, and not only regulate it with regard to the limited factors listed in 24 V.S.A. §4409(a)(2).

[2.]    As opposed to merely having the status of a pre-existing conditional use in the district.