STATE OF VERMONT

Docket No. 53-5-18 Vtec

|  |  |
|---|---|
| Banyai Variance | DECISION ON MOTION |

Daniel Banyai seeks a permit to operate a firearms training facility on his property. His land does not have any road frontage and is accessed by a 30-foot-wide right-of-way. On January 2, 2018, the Zoning Administrator for the Town of Pawlet (Town) denied Mr. Banyai's permit application, which sought approval for a structure serving the training facility and for his use of the property for firearms training. The Zoning Administrator stated that the right-of-way used to access the property was too narrow.

At a subsequent hearing on Mr. Banyai's application for a variance for the right-of-way, the Town's Development Review Board (DRB) determined that the right-of-way was a preexisting nonconformity exempt from the Town's Unified Bylaws (Bylaws). The Hadekas, whose property abuts Mr. Banyai's land, timely appealed the DRB's decision to this Court.

On August 21, 2018, the Hadekas submitted their motion for summary judgment. The Town filed its response to the Hadekas' motion, along with a cross-motion for summary judgment, on September 27, 2018.[1] Mr. Banyai did not submit any materials to the Court.

Mr. Banyai is self-represented. The Hadekas are represented by Attorney Michael Tarrant. Attorney John Thrasher represents the Town.

We would like to acknowledge that the parties offered materials in support of their motions showing that tensions are running unusually high in this matter. While we understand that the issues under consideration are deeply personal and important to everyone involved, we

---

[1] In our July 26, 2018 Scheduling Order, we ordered that any pretrial motions be filed by August 27, 2018, and that any responses must comply with the time frames in the V.R.C.P. When the Town did not comply with these deadlines, the Hadekas filed a motion to strike the Town's summary judgment filings and moved for costs and fees. We accepted the Town's filings and denied the Hadekas' motions on the record during a November 5, 2018 conference.

encourage the parties to respect this process, the outcome it produces, and the differences in opinion on each side.

## Standard of Review

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). When presented with cross-motions for summary judgment, we consider each motion individually and give the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

We take the factual allegations made in opposition to each motion as true, as long as they are supported by affidavits or other evidentiary material. White v. Quechee Lakes Landowner's Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted). However, when the nonmovant fails to file a statement of disputed material facts in response to the moving party's asserted facts pursuant to V.R.C.P. 56(c)(1), this Court can consider the asserted facts "undisputed for purposes of the motion." V.R.C.P. 56(e)(2). Nonetheless, even in this context we do not take as true unsupported, conclusory allegations or legal conclusions disguised as facts. See Lamay v. State, 2012 VT 49, ¶ 15, 191 Vt. 635 (citations omitted) (finding no factual basis to evaluate claim because allegations were conclusory).

## Factual Background

We recite the following factual findings solely for the purpose of deciding the pending motions.

1.      Daniel Banyai owns approximately 30 acres at 541 Briar Hill Road in Pawlet, Vermont (Property).

2.      The Property does not have any direct road frontage. It is served by a deeded 30-foot-wide right-of-way over neighboring lands.

3.      In 2011, the Town amended its Bylaws to require that rights-of-way accessing lots undergoing land development must be at least 50 feet wide. See Bylaws, Article V, § 4.

4.    In late 2017, Mr. Banyai began operating a firearms training facility on the Property, under the name Slate Ridge.  This is a new use of the Property.  Prior to this time, the Property was unimproved and vacant.

5.    Around the same time, Mr. Banyai erected a 500-square-foot structure to service the facility without first acquiring a permit.

6.    Along with the structure, the training facility is comprised of outdoor shooting ranges.

7.    Anne and Gary Hadeka own 773 Briar Hill Road in Pawlet, Vermont, which directly abuts the Property and the right-of-way.  They live on the property and historically used it to support a horse farm.  They have halted plans to resume the horse farm because of safety concerns deriving from Mr. Banyai's use of the Property.

8.    On December 5, 2017, Mr. Banyai filed an application for a zoning permit with the Town's Zoning Administrator (ZA), seeking to permit the structure and gain approval for his use of the Property.  In his application, Mr. Banyai defined the existing use as "Land" and the proposed use as "School."

9.    Mr. Banyai supplemented his application by email on December 18, 2017.  The email contained a sketch with two concentric rectangles, representing the structure and the Property, which included the structure's dimensions.

10.    On January 2, 2018, the ZA denied the application.  The basis of the ZA's denial was that the "ROW [right-of-way] needs to be 50' (30' ROW)."  He did not state any other reasons for denying the permit.

11.    On April 1, 2018, Mr. Banyai submitted a letter to the DRB. The letter was headed "Reference: Zoning Appeal."

12.    Mr. Banyai's letter did not reference the time that had lapsed between the ZA's decision and his submission to the DRB.

13.    In the letter, Mr. Banyai described the reason for the ZA's denial of his permit and his goal of operating "a school/training business venture" on the Property.  The letter also stated, "I would like to insert [sic] my right(s) to appeal the denial of the zoning permit dated January 2018 . . . due to a pre-existing nonconforming situation," and "I pray" for "reversal of the denial."

14.     Mr. Banyai included an application for a variance for the 30-foot right-of-way with the letter.

15.     The DRB held a hearing on April 25, 2018.  The warning of the hearing, which the Hadekas received on or around April 20, 2018, stated that the purpose of the hearing was "[t]o discuss the application for a Variance Permit . . ." for the Property.

16.     Included at the bottom of the warning was a handwritten statement: "My Driveway is 30' Easement Looking for 50' approval Any Questions [Mr. Banyai's phone number]."

17.     The Hadekas, along with other members of the public, attended the hearing.  Their comments were directed at Mr. Banyai's use of the Property as a firearms training facility, not the merits of his variance application.

18.     Attorney David Cooper represented Mr. Banyai before the DRB.  He mentioned the ZA's decision at the hearing to provide context for the variance application and Mr. Banyai's preexisting nonconformity argument.

19.     After a deliberative session, the DRB concluded that the 30-foot right-of-way predated the 50-foot requirement in the Bylaws, rendering the Property a preexisting nonconforming lot.

20.     The DRB did not discuss or decide the merits of Mr. Banyai's variance application.

21.     The DRB did not address the merits of the change of use application denied by the ZA.

22.     The DRB informed Mr. Banyai that its determination did not exempt him from other permitting requirements under the Bylaws.

23.     On May 23, 2018, the Hadekas filed a timely appeal of the DRB's decision with this Court.

## Discussion

The motions before the Court first ask us to determine whether Mr. Banyai's April 1, 2018 submission to the DRB was an untimely appeal of the ZA's decision denying his change of use application.  Because we conclude that Mr. Banyai's submission was not an appeal, we next evaluate whether Mr. Banyai's submission to the DRB constituted an impermissible collateral attack on the ZA's determinations, which became final and binding when Mr. Banyai did not

appeal the decision.  Finally, the parties ask us to determine the adequacy of the notice provided by the DRB for the April 25, 2018 hearing.[2]

**I.**     **Whether Mr. Banyai's April 1, 2018 submission to the DRB was an appeal of the ZA's January 2, 2018 decision.**

We first consider whether Mr. Banyai's April 1, 2018 submission to the DRB was an appeal of the ZA's denial of his application with an appended application for a variance, or an application for a variance that was procedurally distinct from the ZA's decision.

The Hadekas argue that Mr. Banyai's April 1, 2018 letter to the DRB was an appeal of the ZA's denial of his application.  They assert that because Mr. Banyai did not appeal until three months after the ZA's decision, and 24 V.S.A. § 4465(a) requires appeals to be filed within 15 days, we should dismiss the appeal as untimely.

The Town contends that Mr. Banyai's submission to the DRB was not an appeal of the ZA's denial.  Instead, it argues, Mr. Banyai did not appeal because he accepted that his right-of-way was too narrow.  In its view, the question before the DRB was whether Mr. Banyai was entitled to a variance or, alternatively, whether the preexisting right-of-way qualified the Property as a lawful nonconforming lot.

Based on the undisputed facts, we conclude that Mr. Banyai's April 1, 2018 submission to the DRB was not an appeal of the ZA's decision.  First, while Mr. Banyai used terms in the cover letter that connoted an appeal, he did not request that the DRB reevaluate his original application.  He only asked for relief from the 50-foot right-of-way requirement.  While Mr. Banyai's choice of words was misleading, this Court has a responsibility to ensure that negligible errors in presentation do not unfairly disadvantage self-represented litigants or distract from the substance of their filings.  See In re Margaret Pratt Assisted Living Site Plan, Conditional Use and Act 250 Approvals, Nos. 111-8-14 Vtec, et al., slip op. at 10-11 (Vt. Super. Ct. Envtl. Div. June 21, 2016) (Durkin, J.) (citing In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 22, 188 Vt. 262).

Second, Mr. Banyai included nothing with the cover letter beyond an application for a variance.  He did not include the prior ZA's decision or provide the application the decision was based on.  The variance application alone was before the DRB.  In conformity with this, the DRB

---

[2] The Court is aware of Mr. Banyai's related permit applications and the Hadekas' additional appeal, which the Town is holding in abeyance.  These matters are not before us.

warned the hearing on Mr. Banyai's application as a hearing to discuss a variance permit. The warning contained no mention of an appeal or the ZA's decision.

Additionally, at the April 25, 2018 hearing itself, the DRB did not address or mention the merits of Mr. Banyai's change of use application. While Attorney David Cooper, who represented Mr. Banyai at the hearing, did reference the ZA's decision, his statements served the purpose of providing context. And when the neighboring land owners who attended the hearing attempted to transition the discussion to the merits of Mr. Banyai's proposed change of use, the DRB remained focused on the single matter before it: the right-of-way.

For the foregoing reasons, we conclude that Mr. Banyai submitted an application for a variance to the DRB, not an untimely appeal of the ZA's denial. Accordingly, the Town's motion for summary judgment on this question is **GRANTED** and the Hadekas' motion is **DENIED**.

II.     **Whether Mr. Banyai's April 1, 2018 application was an impermissible collateral attack on the ZA's January 2, 2018 decision.**

We must next determine whether Mr. Banyai's variance application constituted an impermissible collateral attack on the ZA's unappealed denial of his change of use application.

The Hadekas argue that Mr. Banyai's failure to appeal the ZA's decision rendered the ZA's denial of his application final and binding, along with the ZA's conclusion that the right-of-way was noncompliant. The Hadekas assert that Mr. Banyai could not later attack that final determination while applying for a variance with a claim that the right-of-way was a preexisting nonconformity exempt from the Bylaws.

The Town maintains that Mr. Banyai applied for a variance instead of appealing the ZA's denial precisely because he accepted the ZA's conclusions and recognized that the right-of-way did not conform. The Town goes on to argue that Mr. Banyai was entitled to apply for a variance and, alternatively, to argue that the right-of-way was a preexisting nonconformity, even if he did not appeal the ZA's decision.

A failure to timely appeal decisions like the ZA's denial binds all interested parties to the determinations made therein. 24 V.S.A. § 4472(d). An appeal is the "exclusive remedy" available to a party who wishes to challenge the determinations or acts of a municipal officer or panel. Id. This means that parties cannot later contest, "either directly or indirectly," the contents of the decision "in any proceeding, including any proceeding brought to enforce this chapter." Id.

Finality prevails even where the municipal decision is ultra vires or otherwise in error. In re Feeley Constr. Permits, Nos. 4-1-10 Vtec, 5-1-10 Vtec, slip op. at 14 (Vt. Envtl. Ct. Jan. 3, 2011) (Wright, J.) (citing City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 588-89 (2000); Levy v. Town of St. Albans, 152 Vt. 139, 142 (1989)).

In the context of zoning ordinance enforcement, the Vermont Supreme Court has held that § 4472(d) applies to preclude parties from raising defenses, including a preexisting nonconformity defense, if they did not appeal the underlying enforcement order. See Town of Charlotte v. Richmond, 158 Vt. 354, 356-57 (1992) (concluding that party could not later raise nonconforming use defense because they did not appeal zoning administrator's notice of violation); Town of Sandgate v. Colehamer, 156 Vt. 77, 85-86 (1990) (holding that because defendant's exclusive remedy lay in appeal, which he failed to do, he could not challenge the validity of the ordinance later in the enforcement action); see also Dep't of Corr., 171 Vt. at 589-91 (concluding that § 4472 bars collateral attack of unappealed decision premised on sovereign immunity). A party who does not appeal a zoning administrator's final decision loses the opportunity to raise defenses against that decision later on.

The ZA denied Mr. Banyai's application solely based on a determination that the 30-foot right-of-way did not conform with the Bylaws. This conclusion became final and binding when Mr. Banyai did not appeal. In the hearing on his variance application, Mr. Banyai challenged this conclusion directly by asserting that the right-of-way did conform with the Bylaws as a preexisting nonconformity exempt from the 50-foot right-of-way provision. By raising this argument, Mr. Banyai initiated a direct attack on the ZA's conclusion in a proceeding that was not an appeal under 24 V.S.A. § 4465. Therefore, the question of whether the right-of-way was a preexisting nonconformity was not properly before the DRB at the April 25, 2018 hearing.

On the other hand, the ZA did not determine whether the right-of-way merited a variance. Mr. Banyai had every right to seek a variance for a feature of the Property that did not conform with the Bylaws. He did not need to appeal to preserve this right. See, e.g., Appeal of Robert and Donna Kendall, No. 104-5-02 Vtec, slip op. at 2-3 (Vt. Envtl. Ct. Feb. 28, 2003) (Wright, J.) (recognizing that failure to appeal zoning administrator decision did not preclude appellants from later applying for variance); In re Curry Variance Application, No. 222-10-07 Vtec, slip op. at 8-9

(Vt. Envtl. Ct. Feb. 5, 2009) (Wright, J.) (evaluating application for variance on its merits despite earlier denial of zoning permit that was not appealed).

Because the DRB improperly resolved Mr. Banyai's application on the preexisting nonconformity grounds, it did not consider the merits of his variance application. We therefore **VACATE** the decision below and **REMAND** this matter to the DRB so that it can assess in the first instance whether Mr. Banyai is entitled to a variance.[3] Thus, we **GRANT IN PART** and **DENY IN PART** both the Town's and the Hadekas' motions on this question.[4]

## Conclusion

For the foregoing reasons, we conclude that Mr. Banyai's April 1, 2018 submission to the DRB was an application for a variance, not an appeal of the ZA's denial of his prior permit application. We **GRANT** the Town's motion on this issue and **DENY** the Hadekas' motion.

In addition, the ZA's conclusion that the right-of-way did not comply with the Bylaws became final and binding when it went unappealed. Mr. Banyai cannot collaterally attack this conclusion by arguing that the right-of-way was a preexisting nonconformity. Because the DRB disposed of Mr. Banyai's application on this basis and did not consider whether Mr. Banyai was entitled to a variance, we **GRANT IN PART** and **DENY IN PART** both the Town's motion and the

---

[3] The DRB is required to evaluate Mr. Banyai's variance application under the statutory factors set out in 24 V.S.A. § 4469(a) and incorporated into the Bylaws by Article X, § 9. These factors are:

(1) There are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that unnecessary hardship is due to these conditions, and not the circumstances or conditions generally created by the provisions of the bylaw in the neighborhood or district in which the property is located.
(2) Because of these physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the bylaw, and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
(3) Unnecessary hardship has not been created by the appellant.
(4) The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, or be detrimental to the public welfare.
(5) The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the bylaw and from the plan.

24 V.S.A. § 4469(a).

[4] Because we remand to allow the DRB to assess the merits of Mr. Banyai's variance application, we do not reach the question of whether the DRB provided adequate notice of the April 25, 2018 hearing.

Hadekas' motion on this question.  We **VACATE** the DRB's decision and **REMAND** the matter so the DRB can evaluate the merits of Mr. Banyai's variance application in the first instance.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.


Electronically signed on January 04, 2019 at 11:48 AM pursuant to V.R.E.F. 7(d).


_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division